WILLIAM D. LEONARD, as Receiver, Appellant, *v.* ABRAM POOLE, Impleaded, etc., Respondent.

Where a number of persons and firms have conspired together, in violation of the statutes (2 R. S. 692, § 8, sub. 6; Penal Code, § 168), to do acts injurious to trade, for instance, to unlawfully advance the price of an article of food, the courts will not intervene in favor of any one of the parties to give him redress for frauds perpetrated by another to his detriment in carrying out the unlawful enterprise.

It does not affect the question that the party complained of as guilty of the fraud was acting as agent for the others. All those who knowingly promote and participate in carrying out a criminal scheme are principals, and the fact that one acts, in some respects, in subordination to the others, does not render him less a principal.

Where, therefore, a broker, who was one of the parties to an unlawful scheme to advance the price of lard, but who acted in carrying out the scheme simply as agent for the others, was proved to have defrauded his principals, *held*, that an action to compel him to account was not maintainable; that the courts would not aid in adjusting differences arising out of and requiring an investigation of the illegal transactions.

Reported below, 23 J & S. 213.

(Argued March 28, 1889; decided June 4, 1889.

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made February 10, 1888, which affirmed a judgment in favor of

defendant Abram Poole, entered upon an order dismissing the complaint as to him on trial.

This action was for an accounting.

Between August 13, 1879, and February 9, 1880, defendants Elmore A. Kent and Abram Poole were partners, under the name of E. A Kent & Co., and engaged in buying and selling produce on commission at New York and Chicago. Between the same dates Henry. C. Butcher, Howard Butcher and Henry P. Darlington were partners, under the name of Washington Butcher's Sons, and engaged in the same business at Philadelphia and Chicago. Between the same dates Darius Miller and Nathan G. Miller were partners, under the name of D. & N. G, Miller, engaged in the same business at New York and New Britain, Connecticut. Between the same dates James R. Keene was engaged in business at New York. These firms and said Keene executed and delivered to E. A. Kent & Co. the following contract on the day of its date :

" The undersigned, each for himself and not for the others, hereby agree to form a pool or combination for the purpose of buying and selling one hundred and twenty thousand tierces of lard, and to receive and pay for the amounts set opposite their respective names, to wit, James R. Keene, forty thousand tierces ; Washington Butcher's Sons, forty thousand tierces ; D. & N. G. Miller, twenty thousand tierces ; E. A. Kent & Co., twenty thousand tierces ; and the said parties, each for himself, authorizes and empowers E. A. Kent & Co., in consultation and with the approval of Jas. R. Keene, N. G. Miller and Henry C. Butcher (parties hereto), to purchase and sell at their discretion, or that of a majority of them, the aforesaid quantity (one hundred and twenty thousand tierces), each agreeing to be responsible for the amount set opposite their respective names, and no more ; any profit or loss arising from said purchases and sales to be divided *pro rata* among the subscribers hereto ; and the said parties hereby agree to furnish, on demand, to E. A. Kent & Co., a margin of not less than one dollar per tierce for each and every tierce purchased, and further additional margins, if required, by any

decline in the market-value thereof.　And, whereas, James R. Keene is the present owner of fifty thousand tierces of lard, Washington Butcher's Sons of forty thousand tierces and D. & N. G. Miller of sixteen thousand tierces.　Now, for and in consideration of the sum of one dollar to each of the aforesaid parties paid by E. A. Kent & Co., and for other valuable considerations, receipt of which is hereby acknowledged, the aforesaid James R. Keene, W. Butcher's Sons and D. & N. G. Miller agree and bind themselves to hold, tie up and effectually withdraw from market, so that the same cannot be sold during the continuance of this agreement without the written consent of all the parties hereto, the aforementioned number of tierces of lard, to wit, Jas. R. Keene, 50,000; W. Butcher's Sons, 40,000; D. & N. G. Miller, 16,000; and from time to time, when demanded by E. A. Kent & Co., to furnish the said E. A. Kent & Co. with evidence satisfactory to them that the said number of tierces of lard are withheld from market and in possession of the aforesaid parties, respectively; and it shall be the duty of said E. A. Kent & Co. to obtain such evidence of possession whenever required by either of the parties hereto.　It is further understood and agreed that this agreement, in all its provisions and requirements, shall remain in full force and effect until the aforesaid one hundred and twenty thousand tierces of lard have been accumulated and sold, unless sooner dissolved by the consent in writing of all the parties hereto.

"New York, *August 13th*, 1879.

"James R. Keene .......... 40,000 tierces of lard.
"Washington Butcher's Sons, 40,000 tierces of lard.
"D. &. N. G. Miller........ 20,000 tierces of lard.
"E. A. Kent & Co.......... ....... tierces of lard."

The court found that at the date of this contract it was agreed, between the signers, that E. A. Kent & Co. were not to be interested as principals in the transaction, but were to make the purchases and sales as brokers.　The court also found that shortly after the above contract was executed the

following contract was executed and delivered, by the signers thereto, to E. A. Kent & Co., the existence of which was unknown to James R. Keene:

"For and in consideration of the payment to us, the undersigned, one-half each by E. A. Kent & Co., of any and all profits realized from the purchase and sale of twenty thousand (20,000) tierces lard, or any part thereof, E. A. Kent & Co.'s shares of a total of one hundred and twenty thousand (120,000) tcs. lard, as set forth in a certain agreement made on the 13th day of August, by and between E. A. Kent & Co., D. & N. G. Miller, Washington Butcher's Sons and Jas. R. Keene, we, the undersigned, respectively, D. & N. G. Miller and Washington Butcher's Sons, hereby guarantee and assume all loss, as against said E. A. Kent & Co., on ten thousand (10,000) tcs., each, arising from said transactions.

> "WASHINGTON BUTCHER'S SONS.
> "D. & N. G. MILLER.

"Witness:
　"E. A. KENT."

For the purpose of carrying out their contract Keene, Washington Butcher's Sons and D. & N. G. Miller furnished large sums of money to E. A. Kent & Co., with which they from time to time, between August 13, 1879, and January 31, 1880, bought and sold, on the produce exchanges of New York and Chicago, futures and options in lard; and also bought large quantities of lard some of which was, from time to time, sold. The sales of options, futures and of lard were made, in a way, to and for the purpose of causing the price of lard to fall, so as to enable the pool to purchase it at satisfactory prices, withdraw it from the market, and thereby greatly increase the market-price. Many purchases and sales were made upon the approval of James R. Keene, N. G. Miller and Henry C. Butcher, or a majority of them, but many were made by E. A. Kent & Co. without such approval, and upon their own judgment.

During the period covered by these transactions E. A. Kent

& Co. from time to time delivered to James R. Keene statements of the purchases and sales made for the parties interested. Many of the purchases and sales entered upon these statements were not descriptive of actual transactions, but described alleged sales by themselves to themselves; and purchases by themselves from themselves, upon which alleged transactions commissions were charged, which facts were not disclosed by the statements nor in any other way. January 31, 1880, the defendants furnished said Keene with a summary statement of the alleged transactions, which showed $133.09 due from them to him (aside from a difference in interest), and February 6, 1880, they sent him a check for this amount, and February 9, 1880, they sent him a check for $127.95, the alleged difference in interest. These checks were retained and collected, but were not accepted in settlement. The court found that the statements were fraudulent, and that a much larger sum was due Keene from the defendants than was shown by their statements; but that the parties having engaged in an unlawful conspiracy, the court would not adjust their differences, and dismissed the complaint, with costs.

*Stephen H. Olin* for appellant. Unless the plaintiff's right to recover is destroyed by the illegality of the contract, he was entitled to judgment for an accounting. (Story's Eq. Jur. §§ 462, 464, 468; *Marston* v. *Gould*, 69 N. Y. 220; *Marvin* v. *Brooks*, 94 id. 71; *Fairchild* v. *Valentine*, 7 Robt. 564; *Boody* v. *Drew*, 2 T. & C. 69.) Money paid to an agent under an illegal agreement becomes the property of the principal in the agent's hands, for which he should account. He has no right to refuse payment to his principal because his principal had not a legal claim for the money on the agreement. (*Murray* v. *Vanderbilt*, 39 Barb. 140; *Merritt* v. *Millard*, 4 Keyes, 268; *Berkshire* v. *Evans*, 4 Leigh. 233; *Tenant* v. *Elliot*, 1 B. & P. 3; *Farmer* v. *Russell*, 1 id. 296; *Bonsfield* v. *Wilson*, 16 M. & W. 185; *Keiwert* v. *Rindskopf*, 46 Wis. 485; Broom's Legal Maxims, 567, 568; *Anderson* v. *Moncrieff*, 3 Des. Eq. 124, 125.) Where an illegal transaction

has taken place, the agent who has received the money on the part of the principal shall not shelter himself from the payment of it to his principal under the pretense of the illegality of the original transaction. (*Tenant* v. *Elliot*, 1 B. & P. 3; *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 499; *Heckman* v. *Swartz*, 50 Wis. 267; *Keiwert* v. *Rindskopf*, 46 id. 481; Wood on Master and Servant, § 202; *Anderson* v. *Moncrieff*, 3 Des. 126; *Brooks* v. *Martin*, 2 Wall. 79; *Gilliam* v. *Brown*, 43 Miss. 641; *Mann* v. *Kelly*, 5 Fed. Rep. 564; *Woodward* v. *State*, 2 N. E. R. 321; *U. S. E Co.* v. *Lucas*, 35 Ind. 361; *Rotherock* v. *Perkinson*, 61 id. 39; *State* v. *Tunny*, 81 id. 559; *Sharp* v. *Taylor*, 2 Philips' Ch. 301; *McBlair* v. *Gibbs*, 17 How. [U. S.] 232, 237; *Cook* v. *Sherman*, 20 Fed. Rep. 167; *Lemon* v. *Crosskopf*, 22 Wis. 447; *Owen* v. *Davis*, 1 Bailey, 316; *Frost* v. *Plumb*, 40 Conn. 111, 113; *Parsons* v. *Randolph*, 8 West. 863; *T. N. Bk.* v. *Harrison*, 10 Fed. 243, 250; *Willson* v. *Owen*, 30 Mich. 474; *Baldwin* v. *Potter*, 46 Vt. 402; Greenhood on Pub. Pol. 98, 101, 102.)

*Joseph H. Choate* for respondent. The agreement under which were carried on the transactions in controversy is contrary to public policy and void. (Greenh. on Pub. Pol. 642; *Arnot* v. *P., etc., C. Co.*, 68 N. Y. 558, 566; *S. C. Bk.* v. *King*, 44 id. 87; *M. R. C. Co.* v. *B. C. Co.*, 68 Penn. St. 173; *Hooker* v. *Vandewater*, 4 Denio, 352; *Samson* v. *Shaw*, 101 Mass. 145; *Craft* v. *McConoughy*, 79 Ill. 346; *Clancy* v. *O. F. S. Mfg. Co.*, 62 Barb. 895; *Wright* v. *Ryder*, 36 Cal. 342.) The plaintiff has no standing in equity to compel an accounting in respect of transactions carried on to create a corner in the lard market, or to force an advance in the price of lard. (Greenh. on Pub. Pol. 96, 97, 100, 106, 110; *Woodworth* v. *Bennett*, 43 N. Y. 273, 277; *Kelly* v. *Develin*, 58 How. Pr. 487; *Ralfe* v. *Delmar*, 7 Robt. 80; *Chappell* v. *Wysham*, 4 H. & J. 560; *Campbell* v. *Anderson*, 2 Dur. 384; *Thorne* v. *T. Ins. Co.*, 80 Penn. St. 15; *Clements* v. *Yturria*, 81 N. Y. 285; *Armstrong* v. *Toler*, 11 Wheat. 258; *Steers* v. *Laishby*, 6 T. R. 61; *Dunbar* v. *Johnson*, 108 Mass. 519; *M. R. C.*

*Co.* v. *B. C. Co.*, 68 Penn. St. 173; *Craft* v. *McConoughy*, 79 Ill. 346; *Oscanyan* v. *Arms Co.*, 17 Am. L. Reg. [N. S.] 626, 633; 103 U. S. 261; *Keiwert* v. *Rindskopf*, 46 Wis. 481: *Merritt* v. *Millard*, 4 Keyes, 208; *Anderson* v. *Moncrieff*, 3 Desaus. Eq. 124; *Sharp* v. *Taylor*, 2 Ph. Ch. 801; *Cook* v. *Sherman*, 20 Fed. Rep. 167; *Sikes* v. *Beuson*, L. R., 11 Ch. Div. 170; *Kine* v. *Kent*, 7 N. Y. State Rep. 229.) Upon the uncontroverted facts the final account which, on January 31, 1880, respondent's firm rendered to Keene became a stated and settled account. (*McPherson* v. *Small*, 41 N. Y. Super. Ct. 537; *Bruen* v. *Hone*, 2 Barb. 586; *Phillips* v. *Belden*, 2 Edw. Ch. 1; *Lockwood* v. *Thorne*, 18 N. Y. 285; 11 id. 170; *Hitchinson* v. *Market Bk.*, 48 Barb. 302; *Koch* v. *Bonitz*, 4 Daly, 117.) To an action brought for an accounting, an account stated and settled is an absolute bar. (52 How. Pr. 382–385; Story's Eq. Pl. 800; *Stoughton* v. *Lynch*, 2 Johns. Ch. 217; *Laycraft* v. *Dempsey*, 15 Wend. 83; *Chubbuck* v. *Vernam*, 42 N. Y. 432; *McIntyre* v. *Warren*, 3 Abb. Ct. App. Dec. 99; *Harley* v. *Eleventh Ward Bk.*, 76 N. Y. 618; *Wilde* v. *Jenkins*, 4 Paige Ch. 481; *Ogden* v. *Astor*, 4 Sandf. 312.)

FOLLETT, Ch., J. When the transactions out of which this action arose were being carried on the statutes of this state provided that if two or more persons conspire to commit any act injurious to trade or commerce, each of them is guilty of a misdemeanor. (2 R. S. 692, § 8, subd. 6.) The same provision is contained in the Penal Code, section 168. The scheme entered into by the parties to the contract of August 13, 1879, was an indictable misdemeanor. (2 R. S. 692, § 8; *People* v. *Fisher*, 14 Wend. 9; *Hooker* v. *Vandewater*, 4 Denio, 349; *Stanton* v. *Allen*, 5 id. 434; *Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558, 565; *Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Penn. St. 173.) The scheme which the parties to the contract for a time pursued, and sought to consummate, was identical with the one described in the contract,

and equally criminal. That Keene, Washington Butcher's Sons and D. & N. G. Miller agreed to engage, and actually engaged, in an unlawful plot to advance the price of lard cannot be successfully denied, and the courts of this state will not entertain an action to adjust their differences. This proposition is well settled; and we do not understand that the learned counsel for the appellant gainsays it, nor does he assert that the rule would not be applicable to a case arising between those parties and out of these transactions. The learned counsel for the appellant insists that Kent & Co. were not principals, but were mere agents for the principals, and that they cannot avoid payment upon the ground that the transactions were illegal. When persons knowingly promote and participate in carrying out a criminal scheme they are all principals, and the fact that one of the parties, acts, in some respects, in subordination to the others, and is to profit less than the others, or not at all, by the consummation of the scheme, does not render such person less a principal.

This rule is elementary, and does not require elaboration or the citation of authorities. Thoughout the period covered by the transactions these defendants bought and sold lard and futures and options in lard, and actively engaged in the attempt to carry out the unlawful enterprise. If, at the close of their transactions, Keene and his associates had been found to be owing Kent & Co., we think it very clear that the illegality of the enterprise would have been a perfect defense to an action brought by Kent & Co. to recover the sum due. (*Bartlett* v. *Smith,* 13 Fed. Rep. 263; *Cobb* v. *Prell,* 15 id. 774; *Irwin* v. *Williar,* 110 U. S. 499.) In the case last cited Mr. Justice Matthews, in speaking for a unanimous court, said: "In *Roundtree* v. *Smith* (108 U. S. 269), it was said that brokers who had negotiated such contracts, suing not on the contracts themselves, but for services performed and money advanced for defendant at his request, though they might under some circumstances be so connected with the immorality of the contract as to be affected by it, they are not in the same position as a party sued for the enforcement of the original

agreement.    It is certainly true.that a broker might negotiate
such a contract without being privy to the illegal intent of the
principal parties to it which renders it void, and in such a case,
being innocent of any violation of law, and not suing to
enforce an unlawful contract, has a meritorious ground for
the recovery of compensation for services and advances.    But
we are also of the opinion that when the broker is privy to
the unlawful design of the parties, and brings them together
for the very purpose of entering into an illegal agreement, he
is *particeps criminis,* and cannot recover for services rendered
or losses incurred by himself on behalf of either in forward-
ing the transaction." (110 U. S. 509.)    Several cases have
been cited holding that money or property deposited with a
third person, which was derived from or through an unlawful
enterprise, may be recovered; and that the illegality of the
transaction out of which the money or property arose cannot
be successfully asserted as a defense by a mere agent or
depositary.    This rule is well settled, but it is not germane to
this case.    Other cases are cited holding that when the parties
to an illegal transaction have accounted, as between themselves,
and agreed that a definite sum belongs to each, that an action
may be maintained upon the accounting or new promise, and
the sum, once admitted to be due, recovered.    Admitting these
cases to be well decided, they do not aid the appellant.    These
parties have had no accounting.    No admission has been made
that a specified sum is due to any one of them.    No promise
has been made since the completion of the illegal scheme
upon which a recovery is sought.    On the contrary, this action
is for an accounting between the parties.    It is alleged in the
complaint that the amount which the plaintiff is entitled to
recover is unknown, and can only be ascertained by an
investigation of the illegal transactions between the parties.
The judgment prayed for is: " That an account may be taken
of all the dealings and transactions, purchases and sales of
lard made and conducted by said defendants E. A. Kent &
Co.. under the agreement hereinbefore mentioned," etc.

The relief sought would require the court to investigate all

of the various transactions of these parties, from the beginning to the end of their unlawful enterprise, and adjust the differences between them. This is precisely what courts have always refused to do. The fraud which the trial court found was practised by these defendants upon their associates cannot be too strongly condemned, but courts are not organized to enforce the saying that there is honor among law-breakers, and the desire to punish must not lead to a decision establishing the doctrine that law-breakers are entitled to the aid of courts to adjust differences arising out of, and requiring an investigation of, their illegal transactions.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.