THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, v. CARSON J. SHELDON, CHARLES J. FERRIN,
SHELDON N. COOK AND EDWARD S. BROWN,
APPELLANTS.

*Conspiracy — association of retail coal dealers to regulate prices.*

An association was formed of the retail coal dealers of a city, the main purpose of
which was to fix prices below which coal should not be retailed in the city and
vicinity, and the scheme of which organization, if fully carried out, would
practically compel, under prescribed penalties, every coal dealer in the city to
join it and regulate his business by its constitution and by-laws, which pro-
hibited soliciting business, except as provided therein, and the taking of club
orders of associated buyers at reduced prices, and provided for keeping the retail
price of coal uniform, so far as practicable, and required a certain vote of the
association to change the price.

*Held,* that the association constituted a combination in restraint of trade, and that
membership in such association would support a conviction on an indictment
for conspiracy to commit acts injurious to trade.

That this was so, although the constitution of such association also provided that
no price was to be made at any time, amounting to more than a fair and rea-
sonable advance over wholesale rates, or than the current prices of the coal
exchanges at certain designated neighboring cities when figured upon corre-
sponding freight tariffs, and although the rental price of coal actually fixed by
the association was a fair price.

APPEAL by the defendants, Carson J. Sheldon and others, from a
judgment of the Niagara County Sessions, rendered on the 28th day
of June, 1892, upon a verdict convicting the defendants of the
crime of conspiracy, with notice of an intention to bring up for
review, upon such appeal, an order of that court denying the defend-
ants' motion for a new trial.

*E. M. Ashley,* for the appellants.

*P. F. King,* for the respondent.

LEWIS, J.:

The defendants were convicted in the Niagara County Sessions
of the crime of conspiring together to commit acts injurious to trade.
They were retail dealers in coal in the city of Lockport, and with
eight or ten other dealers in coal in that city, they organized an

association called the Lockport Coal Exchange. They adopted a constitution and by-laws, the provisions of which are very voluminous. It is not necessary to rehearse them. Many of them were innocent, and to be commended. The main purpose, however, of the association was to fix prices, below which coal should not be retailed in Lockport and its vicinity.

The scheme of the organization, if fully carried out, practically compelled every dealer of coal in that city to join the association, and regulate his business by its constitution and by-laws. They were required to sell coal at prices fixed, from time to time, by a vote of the members of the association. The members were required, when joining the organization, to pay an initiation fee of $100, and to pay annual dues of five dollars.

Penalties were prescribed for a violation of the constitution and by-laws of the association. Soliciting business was prohibited, except in the manner prescribed in the constitution. Dealers were not permitted to take club orders of associated buyers at reduced prices. Under the head of "discipline," it was provided that should a member be charged with violating any of the provisions of the by-laws, or any rule or resolution of the exchange, he should be summoned before the secretary to answer the charge. If the secretary should decide to sustain the charge, the member was to be declared in default, and considered in default until five-sixths of the members should vote to reinstate him. By being in default, he forfeited all rights to the money, property or other value held by the exchange. If charged with violating any provision of the constitution or by-laws, the member was required to make affidavit that he had, in no instance, sold or delivered coal for which he had not received the full price at which the majority of the other members were selling coal of the same size at the same time, and that he had not, directly or indirectly, given any rebate, commission or other concession equivalent to cash, thereby actually reducing the established market-price made by the Lockport Coal Exchange. "When a member defies the exchange by persistent wrong-doing, and is declared to be in default, and, if persistent, the secretary shall notify the shippers of coal to the Lockport market that the said member is in default and persistent, and for this reason is not entitled to the privileges of membership in the Lockport Exchange."

The constitution further provided that the price of coal at retail should, as far as practicable, be kept uniform, and it required a five-sixth vote of all members of the Exchange at any meeting to advance or reduce the retail price. of coal; no price was to be made at any time amounting to more than a fair and reasonable advance over wholesale rates, or that was higher than the current prices of the Exchanges at Rochester and Buffalo, when figured upon corresponding freight tariff. Fourteen of the coal dealers of the city joined the association, and they included all the dealers but one in the city. One dealer neglected to qualify as a member. Notice was given to the wholesale dealers, who furnished coal to the dealers in Lockport, of the failure of said dealer to join the association, and the wholesale dealers receiving such notice, though they had been accustomed theretofore to sell coal to said dealer, refused thereafter to furnish him with coal. After the organization of the association a meeting of the members was held and they voted to fix the price of certain kinds of coal at four dollars and seventy-five cents a ton. Such coal theretofore, owing to the cutting of prices among the dealers, had been selling at less than cost; the evidence tended to show that the price of four dollars and seventy-five cents, fixed by the association, was a fair price for coal at that time in Lockport. The constitution provided for a secretary and treasurer of the association, who should have access to the books of the dealers to enable him to ascertain if they were conforming their business to the rules of the association.

The jury found the defendants guilty, and they were severally sentenced to pay a fine of fifty dollars, or each stand committed to the common jail of Niagara county not exceeding one day for each dollar of said fine, in case of failure to pay the fine. The question presented by this appeal is, whether the defendants were proven guilty of the crime for which they were convicted. It is an important question, especially in view of the large number of similar organizations existing in this country at the present time, and the important influence they exert upon business affairs. The purpose of the association, if carried out, would undoubtedly have had an important effect upon the coal traffic in the city of Lockport.

It would have materially affected and practically prevented competition in one of the necessaries of life. An arbitrary price at

which coal should be sold was to be fixed by a majority vote of the members, and every ton of coal was to be sold at the price thus fixed, neither more nor less. A purchaser who desired a large quantity of coal could not obtain better rates than one desiring to purchase a single ton. While the rate which had been fixed by the association, the evidence tended to show, was a reasonable one, the constitution gave them power to change the rates at any time, and there is nothing in the constitution prohibiting their fixing extortionate prices, provided associations of the same character in Buffalo and Rochester should also establish extortionate prices. Trade is defined by Jacobs, in his law dictionary, to mean "mutual traffic, buying, selling or exchange of articles between members of the same community."

Bouvier, in his law dictionary, defines trade as "Any sort of dealings by way of sale or exchange."

It was held in the case of the *People* v. *Fisher and Others* (14 Wend., 9), that a combination among the journeymen shoemakers of the village of Geneva, for the purpose of regulating the price for manufacturing boots, and carrying such rules into effect by overt acts, was indictable as a misdemeanor. This was before the passage of the law permitting the orderly and peaceful assembling or co-operation of persons employed in any calling, trade or handicraft, for the purpose of obtaining an advance in the rate of wages or compensation, or of maintaining such rate.

In *De Witt Wire Cloth Company* v. *New Jersey Wire Cloth Company* (14 N. Y. Supp., 277), in the New York Common Pleas, Special Term, it was decided by Judge PRYOR that an association of manufacturers of wire cloth, formed for the avowed purpose of regulating the price of the commodity, each of the members stipulating, under a heavy penalty, that he will not sell at less than a specified rate, was contrary to public policy and illegal.

He refers to a number of authorities which hold that whatever destroys, or even restricts, any competition in trade, is injurious, if not fatal to it, and that a combination to control prices is illegal.

It was held in *Leonard* v. *Poole* (114 N. Y. 371), that conspiring to unlawfully advance the price of an article of food was unlawful.

In *Hooker* v. *Vandewater* (4 Denio, 349), the proprietors of five

several lines of boats, engaged in the business of transporting persons and freight on the Erie and Oswego canals, entered into an agreement among themselves, fixing the rates of freight and passage upon their boats, and to divide the net earnings among themselves, according to certain proportions fixed in the articles; it was held to be a combination, tending to destroy competition between the several lines engaged in the business, and unlawful. Judge JEWETT, speaking for the court, says: " The transaction amounted, as I think, to a conspiracy, to commit an act ' injurious to trade,' within the legal meaning of the statute, denouncing it as a crime, and was, therefore, illegal and void." It is the policy of the law to encourage trade and commerce, and combinations which tend in restraint thereof are illegal. Agreements made to take trade out of the realms of competition are against public policy. (*Santa Clara V. M. and L. Co.* v. *Hayes* 76 Cal., 387.) Even although it may not appear that such agreement did really produce any result detrimental to public interests. (*Atcheson* v. *Mallon*, 43 N. Y., 147.) The case seems to have been fairly submitted to the jury, and they found the defendants to have been guilty of acts which tended to injure trade. We think their verdict was justified by the evidence.

The judgment and order appealed from should be affirmed, and the case remitted to the Niagara County Sessions, with directions to proceed thereon.

DWIGHT P. J., and MACOMBER, J., concurred.

Judgment of conviction and order appealed from affirmed, and the case remitted to the Court of Sessions of Niagara county, with directions to proceed thereon.