Sylvanus Judd, as Treasurer, etc., Appellant, v. Dennis Harrington, Respondent.

An agreement, the real nature and purpose of which is to suppress competition in an article of food, and so tends to enhance the price, is contrary to public policy and is void.

Certain parties, who were brokers and dealers in sheep and lambs, executed an agreement, by its terms organizing an association for the declared purpose " of guarding and protecting their business interests from loss by unreasonable competition," by which they agreed to pool their commissions, except such as should be agreed to be paid to a certain butchers' association, and the association so formed entered into an agreement with the butchers' association, by the terms of which the brokers were only to sell to the butchers, and the butchers to buy only of the brokers belonging to their respective associations. In an action brought by plaintiff as treasurer of the brokers' association against one of its members to recover damages stipulated therein for a breach of the agreement, *held*, that the two agreements were to be taken and considered together; that they were intended to control the markets, fix the price and destroy competition, and so were invalid and not enforcible; that the public might be prejudiced, and whether they were so in fact was not material.

(Argued June 7, 1893; decided October 3, 1893.)

Appeal from judgment of the General Term of the Court of Common Pleas of the city of New York, entered upon an order made June 6, 1892, which affirmed a judgment in favor of defendant, entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. Prentice* for appellant. The court decided to submit the question to the jury whether or not the contract in suit was not void by reason of the intent with which the parties had entered into it. This proceeding was an error in law which entitles this plaintiff to a new trial. (*Dwight* v. *L. Ins. Co.*, 103 N. Y. 352; *Brady* v. *Cassidy*, 104 id. 155; *Stokes* v. *Johnson*, 57 id. 675; *Kenyon* v. *K. C. T. & M. A.*

*Assn.*, 122 id. 247; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.*, 121 id. 444; *D. M. Co.* v. *Roeber*, 106 id. 483.) The parties had the right to make this contract, and it is not a restraint of trade. (*W. T. Co.* v. *Pool*, 51 Hun, 157; *Leslie* v. *Lorillard*, 110 N. Y. 532; *D. M. Co.* v. *Roeber*, 106 id. 473; Greenwood on Public Policy, 678; *Rousillou* v. *Rousillou*, L. R. [14 Ch. Div.] 351; *Hodge* v. *Sloan*, 107 N. Y. 244; *Metzger* v. *Herman*, 12 Wkly. Dig. 181.) The agreement calls for the payment of money monthly into the common fund. All others have paid and this defendant continued to until his percentage of receipts were less than his monthly dues. He has thus induced the other parties to part with their money on his promise to pay his dues, and he is estopped from contesting the validity of the agreement, and is legally held to its performance. (*L. S. Assn.* v. *Levy*, 3 N. Y. S. R. 514.)

*E. C. Boardman* for respondent. Even if the agreement sued on be not void on its face, it is void as forming one of a number of agreements which, taken together, constitute a scheme or pool, which is void. (*Arnott* v. *C. Co.*, 68 N. Y. 559; *Stanton* v. *Allen*, 5 Den. 434; *Clancy* v. *S. Co.*, 62 Barb. 395; *Hooper* v. *Vanderwater*, 4 Den. 394; *People* v. *Fisher*, 14 Wend. 9–19; *Colles* v. *T. Co.*, 11 Hun, 397; *Watson* v. *The Companies*, 52 How. Pr. 348; *C. Co.* v. *C. Co.*, 68 Penn. St. 182; *S. Co.* v. *Guthrie*, 35 Ohio St. 572; *Croft* v. *McConoughly*, 79 Ill. 339; *Santa Clara* v. *Hayes*, 38 Alb. L. J. 279; *Bank* v. *King*, 44 N. Y. 87; *Case of Monopolies*, 11 Coke, 84; *Raymond* v. *Leavitt*, 46 Mich. 447; *I. B. Co.* v. *Koch*, 14 La. Ann. 164; *Ray* v. *Mackin*, 100 Ill. 246; *People* v. *Stevens*, 71 N. Y. 545; *Marsh* v. *Russell*, 66 id. 288; *Hartford, etc.,* v. *R. R. Co.*, 3 Robt. 411; *Hilton* v. *Eckersley*, 6 El. & Bl. 47; *Central, etc.,* v. *Collins*, 40 Ga. 646; *Hoffman* v. *Brooks*, 11 Wkly. L. Bull. 258; *People* v. *N. R. S. R. Co.*, 121 N. Y. 582; *C. R. B. Co.* v. *W. B. Co.*, 11 Pet. 567; *Stewart* v. *Co.*, 17 Minn. 372; *Gas Co.* v. *Gas Co.*, 2 Am. St. Rep. 124; *City* v. *G. L. Co.*, 70 Mo. 69;

*Fisher* v. *Bush*, 25 Hun, 641; *People* v. *Marx*, 99 N. Y. 377; *Alger* v. *Thatcher*, 19 Pick. 51; *Wright* v. *Rider*, 36 Cal. 362; *Crawford* v. *Wick*, 18 Ohio St. 190; *Yale* v. *Dart*, 13 N. Y. Supp. 277; *B. F. Co.* v. *S. P. Co.*, 14 id. 463.)

O'BRIEN, J.    The plaintiff, as treasurer of an association called the New York and New Jersey Sheep Brokers' Association, sued to recover $10,000, stipulated as liquidated damages, in a contract entered into between the association and the defendant.    He was defeated in the action, and one of the questions presented is whether the contract is of such a · character as to entitle the plaintiff to invoke the aid of the court for its enforcement.

The contract was executed, as appears from its date, on the 11th of April, 1887, and was to be operative from the first of January preceding.    The parties who signed the agreement were brokers and dealers in sheep and lambs consigned to market in New York and vicinity.

The paper recites that the persons signing the same, of whom the defendant was one, had associated themselves together for the purpose of guarding and protecting their business interests from loss by unreasonable competition, and that they had agreed to pool and make a common fund of all commissions earned in the sale of sheep and lambs excepting such as it was agreed should be paid to the " Sheep and Lamb Butchers' Benefit Association of the City of New York."    All the members of the association thus formed by the agreement then proceed to enter into various stipulations with each other. Those that are material to the question involved are as follows :

(1) That all members of the association thus formed and everyone subsequently admitted should keep a just and true account of the number of sheep and lambs sold by them or their firms, by correct entries to be made in a book to be kept for that purpose ; that at the close of each week, or within two days thereafter, a written statement from the books was to be made by each member to the treasurer showing the full

amount of sheep and lambs sold during the week, which state-ment the treasurer was to enter in a book to be kept by him and at the same time file the statement for reference.

(2) At the close of each month a settlement between the members was to be made, and the treasurer was to ascertain the total number of sheep and lambs sold, and the total sold by each member, and make a statement of the same, a copy of which, within two days thereafter, was to be delivered to each member who was, within three days thereafter, to pay to the treasurer eleven and three-fourth cents per head for each and every sheep and lamb sold by him or his firm during the month as appeared from the treasurer's statement. Then the treasurer was to distribute the fund between the members according to the percentage of the whole fixed by the agreement.

(3) All moneys which the treasurer was to receive from the butchers' association above mentioned was to be divided between the members in the same way.

(4) For a violation of this agreement each member is to pay the treasurer $10,000, to be divided between the members in the same way. It is alleged that the defendant carried out the agreement on his part until about February 1, 1889, when he refused to abide by it, and from that date wholly failed and refused to render to the treasurer the account and state-ment provided for in the agreement.

On the 26th of December, 1886, the brokers' association, formed as above described and represented in this action by the plaintiff, and the butchers' association, above mentioned and referred to in the agreement, entered into a mutual agree-ment with each other, to take effect at the same date as the one above described, to wit, January 1, 1887. This agree-ment recited that the brokers were engaged in selling and the butchers in buying sheep and lambs for slaughter, and that it was for the interest of both that they should be closely con-nected in business, and should mutually aid and protect each other as thereinafter set forth. The brokers bound themselves to keep correct books of account, showing the number of

sheep and lambs sold by them on the market, and at the close of every month to render a full and true statement of all such sales to the secretary of the butchers' association, and at the same time pay to said secretary three and one-fourth cents per head for each and every sheep and lamb sold. The brokers further agreed :

(1) Not at any time during the term of the agreement to engage in or be directly or indirectly engaged in slaughtering sheep or lambs, except for export.

(2) Not to sell any sheep or lambs to anyone else except the members of the butchers' association, and if they did they were bound to pay the treasurer of the last-named association fifteen cents per head for the same. Any sales so made were to be reported every week and payment made on account thereof.

The butchers agreed to report to the brokers the names of all members of the association, including new members to be added from time to time; that they would buy sheep and lambs from the brokers only, and if from any other parties, they would pay over to the brokers on account thereof fifteen cents per head, which purchases were to be reported to the brokers every week. These two papers must be read together, and thus considered they manifestly were intended for the purpose of creating a combination between the butchers engaged in buying and the brokers engaged in selling sheep and lambs, in order to control the market, fix the price and destroy competition. The brokers were to sell only to the butchers, and the butchers to buy only from the brokers. The owners of sheep, or the drovers or consignees who had them for sale, and the public who were interested in the price of meat, as an article of food, might have been prejudiced by the agreement. Whether they were in fact is not material.

The real purpose and intent of the agreement was to suppress competition in an article of food, and as such agreements tend to enhance the price, they are regarded as detrimental to the public interest and forbidden by public policy. That such agreements are illegal and void has been settled by the decis-

ions of the courts from the earliest times. These authorities are to be found in the learned opinion below, and upon the briefs of counsel in this court, but I do not consider it necessary to refer to them further, or to discuss the question at length, for the reason that at this very term of the court the whole question has been examined, elaborately discussed and decided in another case. (*People* v. *Sheldon*, Oct., 1893; *S. C.*, 66 Hun, 590.) Courts will not aid parties seeking to enforce such an agreement (*Leonard* v. *Poole*, 114 N. Y. 371), irrespective of the question whether in fact it produced the evil results to which it tended or was harmless. It is said that the purpose was to facilitate the transaction of business and save useless expense. It is quite likely that the agreement did enable the parties to transact their business with less labor and expense, and that may be said of nearly all such combinations; but that circumstance cannot save them from condemnation when they tend to prejudice the public. The illegal character of the agreement appeared upon its face, and was a necessary legal conclusion from its provisions. It was doubtless the duty of the court to dispose of the case as presenting a question of law, but the illegal intent and purpose having been found by the jury, when the court was bound to declare it, the plaintiff is not injured by the ruling at the trial submitting the case to the jury on the question of the purpose and intent of the agreement. The right of the plaintiff to recover when no actual damages have been alleged or proven, and some other questions, are involved in the case, but it is unnecessary to consider them, as the illegal nature of the agreement sued upon is a fundamental objection to a recovery.

The judgment should be affirmed, with costs.

All concur, GRAY, J., in result.

Judgment affirmed.