THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* THE MILK EXCHANGE (Limited), Respondent.

*When the people of the State are entitled to a judgment dissolving a corporation — when it is error to take from the jury a question presented by the evidence.*

Where the purposes for which a corporation is conducted are unlawful, the People of the State are entitled to a judgment dissolving the same and adjudging its franchise to be forfeited.

In an action brought by the People of the State to procure the dissolution of a corporation and the forfeiture of its franchise, where a question is presented by the evidence whether the business conducted by such corporation was the purchasing and selling of milk, or whether the corporation was created to effect an illegal combination to prevent competition in the purchase and sale of milk, it is error to take such question from the jury.

APPEAL by the plaintiff, The People of the State of New York, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Broome on the 17th day of May, 1893, upon the decision of the court rendered at the Broome Circuit dismissing the plaintiff's complaint.

The action was brought to procure a dissolution of the defendant corporation and forfeiture of its franchise under the provisions of sections 1785 and 1798 of the Code of Civil Procedure.

It was claimed at the trial and was urged on the appeal that the defendant had suspended its ordinary and lawful business for at least one year and had failed to exercise its powers, and that it had violated provisions of law and abused its powers and had exercised privileges and franchises not conferred upon it by law, and that by reason thereof the People were entitled to the relief asked for in the complaint.

The object and nature of the business for which the corporation was formed, as stated in its articles of incorporation, was " the buy-

ing and selling of milk at wholesale and retail; the purchase of dairies of milk when deemed advisable, and the sale of the same to milk dealers."

The claim that the defendant suspended its business and failed to exercise its powers was based upon the assertion that defendant's business, as carried on, was not the buying and selling of milk, within the terms of the articles of incorporation.

The claim that the defendant had violated provisions of law and abused its powers was based upon the charge that defendant had engaged in a combination to restrain competition in the purchase and sale of milk, to fix the price thereof, and so control the market price.

Evidence was given in behalf of the People upon these subjects, which the trial court, however, held insufficient to establish either of these allegations or claims.

*C. L. Andrus,* for the appellant.

*Alfred Ely,* for the respondent.

WILLIAMS, J.:

Evidence was given on the trial as to the nature of the business actually carried on by the defendant, as to whether it was the buying and selling of milk, or a broker business. Some portions of this evidence seem to indicate that the business was buying and selling, and other portions that it was merely a broker business. The conclusions to be drawn from the evidence were clearly for the jury and not for the court, but each party, having confidence that the court would draw the conclusion favorable to his side, conceded that the question was for the court and not for the jury. Whether there was, in the carrying on of the business, such a combination as the law condemns, to fix and control the price of milk and restrain competition in the purchase and sale of milk, was a question more or less complicated and mixed up with the question as to whether such business was a purchasing and selling of milk by the defendant or a broker business in milk. It seems to me the taking of this question as to an illegal combination from the jury was not justified by the evidence.

In a recent case in the Court of Appeals (*People* v. *Sheldon et al.,* 139 N. Y. 251), where the retail coal dealers in the city of Lockport

had entered into an agreement organizing the "Lockport Coal Exchange," for the purpose of their own protection in various ways, ANDREWS, Ch. J., says: "The question here does not, we think, turn on the point whether the agreement * * * did, as matter of fact, result in injury to the public or to the community in Lockport. The question is, was the agreement, in view of what might have been done under it and the fact that it was an agreement the effect of which was to prevent competition among the coal dealers, one upon which the law affixes the brand of condemnation? It has hitherto been an accepted maxim in political economy that 'competition is the life of trade.' The courts have acted upon and adopted this maxim in passing upon the validity of agreements, the design of which was to prevent competition in trade, and have held such agreements to be invalid. . . . . The organization was a carefully devised scheme to prevent competition in the price of coal among the retail dealers, and the moral and material power of the combination afforded a reasonable guaranty that others would not engage in the business in Lockport except in conformity with the rules of the exchange. . . . . If agreements and combinations to prevent competition in prices are, or *may be*, hurtful to trade, the only sure remedy is to prohibit all agreements of that character. If the validity of such an agreement was made to depend upon actual proof of public prejudice or injury, it would be very difficult in any case to establish the invalidity, although the moral evidence might be very convincing."

And in another case (*Judd* v. *Harrington*, 139 N. Y. 105), where there was an organization formed, known as a "Sheep Brokers' Association," the same doctrine was laid down by Judge O'BRIEN.

Considerable evidence was given in this case as to the object and effect of this defendant corporation, the persons who organized it and became its stockholders and directors, the manner of the transaction of its business, and the fixing of the prices of milk, and the effect thereby produced upon the market price of milk generally. The stockholders have been mostly if not entirely persons interested as individuals in the milk trade, separate and apart from their interest as stockholders in the corporation. Indeed, the business of the corporation has not, in and of itself, been remunerative at all. No dividends have ever been paid. The assets of the corporation have not been increased since the organization of the corporation, but

have rather steadily decreased. So that it is claimed the only real interest the stockholders have in the corporation is in its effect upon their business as individuals, by determining the prices to be paid and received for milk. Originally a by-law was enacted to the effect that the board of directors should have power to make and fix the market price at which milk should be purchased by stockholders, and should forfeit the stock of any stockholder who should purchase milk at any other price. This by-law was afterwards repealed, but the business of the corporation was continued, and it is claimed the effect produced by its fixing of prices for milk has been to establish the market price at which all milk has been sold in and about New York City, from whatever source it has come. It is claimed, therefore, that the real object for which the defendant corporation was organized and is being conducted, was and is not to make money in the business carried on by it, but to control the market price of milk, and that an agreement between the persons who organized the corporation, and as stockholders and directors have carried on its business, to conduct it for the purpose stated, was and is an illegal combination, against public policy, and condemned by the law. Whether this claim was and is well founded, under the evidence, was, at least, a question for the jury. The jury may have found the purpose for which the corporation was conducted to be unlawful, and, in that event, the plaintiff would clearly have been entitled to the relief demanded in the complaint.

The judgment for this error should be reversed and a new trial ordered, with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.