(77 Hun, 436.)

## PEOPLE v. MILK EXCHANGE, Limited

(Supreme Court, General Term, Fourth Department. May 18, 1894.)

CORPORATIONS—DISSOLUTION—RESTRAINING COMPETITION.

In an action by the people against a corporation organized to buy and sell milk, to dissolve it on the ground that it was engaged in a combination to restrain competition, it appeared that all the stockholders were engaged in the milk trade; that the business of the corporation had not been remunerative; that no dividends had been paid; that a by-law had been enacted, authorizing the board of directors to fix the price of milk, and, though such by-law was afterwards repealed, the business of the corporation was continued. *Held*, that whether the corporation was organized for an unlawful purpose was a question for the jury.

Appeal from circuit court, Broome county.

Action by the people of the state of New York against the Milk Exchange, Limited, to procure the dissolution of defendant, and forfeiture of its franchise, under Code Civ. Proc. §§ 1785 and 1798. There was a judgment for defendant, and plaintiff appeals. Reversed.

It was claimed at the trial, and is now urged, that the defendant had suspended its ordinary and lawful business for at least one year, and had failed to exercise its powers, and that it had violated provisions of law and abused its powers, and had exercised privileges and franchises not conferred upon it by law, and by reason thereof the people were entitled to the relief asked for in the complaint. The object and nature of the business for which the corporation was formed, as stated in its articles of incorporation, was "the buying and selling of milk, at wholesale and retail, the purchase of dairies of milk when deemed advisable, and the sale of the same to milk dealers." The claim that the defendant suspended its business, and failed to exercise its powers, was and is based upon the claim that defendant's business, as carried on, was not the buying and selling of milk, within the terms of the articles of incorporation. The claim that the defendant had violated provisions of law, and abused its powers, was and is based upon the charge that defendant had engaged in a combination to restrain competition in the purchase and sale of milk, to fix the price thereof, and so control the market price. Evidence was given in behalf of the people upon these subjects, which the trial court, however, held insufficient to establish either of these allegations or claims.

Argued before HARDIN, P. J., and MERWIN and WILLIAMS, JJ.

C. L. Andrus, for appellant.
Alfred Ely, for respondent.

WILLIAMS, J. Evidence was given on the trial as to the nature of the business actually carried on by the defendant, as to whether it was the buying and selling of milk, or a broker business. Some portions of this evidence seem to indicate the business was buying and selling, and other portions that it was merely a broker business. The conclusions to be drawn from the evidence were clearly for the jury, and not for the court; but each party, having confidence that the court would draw the conclusion favorable to his side, conceded the question was for the court, and not for the jury. Whether there was, in the carrying on of the business, such a combination as the law condemns, to fix and

control the price of milk, and restrain competition in the purchase and sale of milk, was a question more or less complicated and mixed up with the question as to whether such business was a purchasing and selling of milk by the defendant or a broker business in milk. It seems to me the taking of this question as to an illegal combination from the jury was not justified by the evidence. In a recent case in the court of appeals (People v. Sheldon, 139 N. Y. 251, 34 N. E. 785), where the retail coal dealers, in the city of Lockport, had entered into an agreement, organizing the Lockport Coal Exchange, for the purpose of their own protection in various ways, Andrews, C. J., says:

"The question does not, we think, turn on the point whether the agreement did, as a matter of fact, result in injury to the public or to the community in Lockport. The question is, was the agreement, in view of what might have been done under it, and the fact that it was an agreement the effect of which was to prevent competition among the coal dealers, one upon which the law affixes the brand of condemnation? It has hitherto been an accepted maxim in political economy that 'competition is the life of trade.' The courts have acted upon and adopted this maxim in passing upon the validity of agreements, the design of which was to prevent competition in trade, and have held such agreements to be invalid. * * * The organization was a carefully devised scheme to prevent competition in the price of coal among the retail dealers, and the moral and material power of the combination afforded a reasonable guaranty that others would not engage in the business in Lockport except in conformity with the rules of the exchange. * * * If agreements and combinations to prevent competition in prices are or may be hurtful to trade, the only sure remedy is to prohibit all agreements of that character. If the validity of such an agreement was made to depend on actual proof of public prejudice or injury, it would be very difficult in any case to establish the invalidity, although the moral evidence might be very convincing."

And in another case (Judd v. Harrington, 139 N. Y. 105, 34 N. E. 790), where there was an organization formed known as a "Sheep Brokers' Association," the same doctrine was laid down by Judge O'Brien.

Considerable evidence was given in this case as to the object and effect of this defendant corporation, the persons who organized it and became its stockholders and directors, the manner of the transaction of its business, and the fixing of the prices of milk, and the effect thereby produced upon the market price of milk generally. The stockholders have been mostly, if not entirely, persons interested, as individuals, in the milk trade, separate and apart from their interest as stockholders in the corporation. Indeed, the business of the corporation has not, in and of itself, been remunerative at all. No dividends have ever been paid. The assets of the corporation have not been increased since the organization of the corporation, but have rather steadily decreased. So that it is claimed the only real interest the stockholders have in the corporation is in its effect upon their business as individuals, by determining the prices to be paid and received for milk. Originally a by-law was enacted to the effect that the board of directors should have power to make and fix the market price at which milk should be purchased by stockholders, and should forfeit the stock of any stockholder who should purchase milk at any other price. This by-law was afterwards repealed, but the business of

the corporation was continued; and it is claimed the effect produced by its fixing of prices for milk has been to establish the market price at which all milk has been sold in and about New York City, from whatever source it has come. It is claimed, therefore, that the real object for which the defendant corporation was organized and is being conducted was and is, not to make money in the business carried on by it, but to control the market price of milk, and that an agreement between the persons who organized the corporation, and, as stockholders and directors, have carried on its business, to conduct it for the purpose stated, was and is an illegal combination, against public policy, and condemned by the law. Whether this claim was and is well founded, under the evidence, was at least a question for the jury. The jury may have found the purpose for which the corporation was conducted was unlawful, and in that event the plaintiff would clearly have been entitled to the relief demanded in the complaint. The judgment for this error should be reversed, and a new trial ordered, with costs to abide event. All concur.