(36 Misc. Rep. 698.)

### EXCELSIOR QUILTING CO. v. CRETER.  ·

(Supreme Court, Special Term, New York County.   January, 1902.)

**1. CONTRACT—RESTRAINT OF TRADE.**
An agreement by the sole manufacturer of quilting machines, the patents on which have expired, and which can be made by any maufacturer, upon a customer buying all his machines in stock, to make no more like them, is valid, and enforceable on its breach by injunction.

**2. SAME—PUBLIC POLICY.**
An agreement, on the purchase of all the machines in the hands of defendant by plaintiff, not to make any more of the same kind, is not an attempt to regulate the market, where the manufacture of such machines is open to all others who may wish to make them.

Action by the Excelsior Quilting Company against George Creter. Motion to continue pendente lite a temporary injunction to restrain defendant from a breach of contract.   Injunction granted.

Dickerson, Brown & Raegener (Louis C. Raegener, of counsel), for plaintiff.

Page & Eckley (Alfred R. Page, of counsel), for defendant.

CLARKE, J.   Plaintiff, a corporation, is engaged in the business of quilting and doing other kinds of sewing.   Defendant was the sole manufacturer of a quilting machine which enables the operator, by running the work through the machine only once, to stitch a large number of seams at one and the same time.   By the operation of a device called a "carriage," the operator can execute different designs of stitching upon the machine, resulting in a very large reduction in the cost of production.   The defendant is the only person who has manufactured the machine and had the patterns or designs therefor, although the patent for the same had long since expired.   Defendant sold in 1895 eight of these machines to plaintiff under a written contract under which he covenanted and agreed that he would not build or equip any quilting machines, or any pattern or attachment thereof, for his own use, or for the use of any other person other than plaintiff, in any of the states of the United States, with the exception of the state of Washington, or in the dominion of Canada, for the period of 99 years; also that he would not engage in the business of designing, manufacturing, or building any quilting machines in any of said states or Canada.   A subsequent agreement was executed between the parties modifying the terms of the first contract in some particulars, but, in the view I take of the case, such modifications are unimportant to this decision.   This is an equity suit to restrain defendant from a threatened breach of said contract.   A preliminary injunction was issued, and this is a motion to continue said injunction pendente lite.   The motion is opposed on the ground that the contracts upon which this action is based are void, as being in unlawful restraint of trade.   The cases bearing on this subject will be found in two principal groups,—the one, in which combinations to regulate a market are held contrary to sound public policy and void; and the other, in which agreements by the vendor of a business not to compete with the vendee, or by other acts injure the sale, are generally upheld.

The first class is described by Judge Landon in Cummings v. Stone Co., 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655:

"It is one of such a combination among many dealers as threatened a monopoly, with which the individual would be practically powerless to compete; and the many consumers who would be severally exposed and coerced would be either compelled to submit to its exactions, or to forego the purchase of the commodity of customary use needful to them, and but for this monopoly obtainable in the market at a reasonable price. The same evil principle pervades both large and small combinations. All are alike offenders, differing in degree, but not in kind. And hence it is that contracts by which the parties to them combine for the purpose of creating a monopoly in restraint of trade, to prevent competition, to control and thus to limit production, to increase prices and maintain them, are contrary to sound public policy and are void."

In that case the agreement was between the producers of at least 90 per centum of all the Hudson River bluestone. In Cohen v. Envelope Co., 166 N. Y. 292, 59 N. E. 609, the manufacturers of 85 per cent. of envelopes of the country combined. In Strait v. Harrow Co. (Sup.) 18 N. Y. Supp. 224, all the manufacturers of float spring tooth harrows entered into a combination to control the market. In People v. Sheldon, 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690, all the retail coal dealers in a city, except one, entered into an agreement to enhance prices. In Judd v. Harrington, 139 N. Y. 105, 34 N. E. 790, certain brokers and dealers in sheep and lambs, supplying the New York City market, entered into an agreement to suppress competition and enhance prices. In People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062, 27 L. R. A. 437, 45 Am. St. Rep. 609, there was a similar agreement between milk dealers. In all these cases elements of combination to regulate the market are found which are not present in the case at bar. There is no combination between manufacturers of quilting machines.

In the second class of cases a business is purchased and continued by a new concern, and the public receives the benefit of the same product, though made by others. Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Tode v. Gross, 127 N. Y. 480, 28 N. E. 469, 13 L. R. A. 652, 24 Am. St. Rep. 475; Thermometer Co. v. Pool, 51 Hun, 157, 4 N. Y. Supp. 861. The agreement before this court does not fall exactly in either class. It does not contemplate a sale of the business of manufacturing quilting machines, nor is it made for the purpose of forming any combination to regulate the market. It is really one of individual right, with which the question of public policy has little, if anything, to do. The defendant is a manufacturer of machinery. He had in 1895 eight quilting machines, and the plaintiff bought the lot, and, as part consideration, arranged with the defendant that no more like them should be made by him. The patents on these machines had long since expired. The patterns and designs can be obtained by any manufacturer of machinery who desires to enter into the making of them. Although this case does not fall directly within the second class, the reasoning applied by Judge Andrews in the Match Co. Case, supra, to a sale of business, applies with equal force here:

"To the extent that the contract prevents the vendor from carrying on the particular trade, it deprives the community of any benefit it might de-

rive from his entering into competition. But the business is open to all others, and there is little danger that the public will suffer harm from lack of persons to engage in a profitable industry. Such contracts do not create monopolies. They confer no special or exclusive privilege."

The test, as laid down by Chief Justice Tindal in Horner v. Graves, 7 Bing. 735, and uniformly applied by the courts of this state, is "whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public." The restraint imposed cannot be said in this case not to be coextensive with the interest to be protected, and with the benefit meant to be conferred. The further question is whether it interferes with the interests of the public. Judge Landon, in Cummings v. Stone Co., 164 N. Y. 404, 58 N. E. 526, 52 L. R. A. 262, 79 Am. St. Rep. 655, says:

"It may be conceded that the law, as now understood, restrains no one from selling his property, nor does it compel any one to continue a business which he can sell, or finds it to his interest to abandon; much less, to continue it for any time or in any particular manner or place. However it may have been when trade was small, money scarce, opportunities and markets few, at present the public has little to fear from any individual renouncing his calling and business in favor of another, and seeking a new field of activity. Contracts between individuals to that effect are not in general restraint of trade."

It is therefore clear that had the defendant sold these machines to a manufacturer of machinery, and agreed not to continue making them himself, the contract would have been valid. The only difference is that the plaintiff proposed to use the machines, and not to make others for the general trade; and it is urged that, as the defendant was the sole manufacturer, a useful machine was lost to the public, and the plaintiff secured a monopoly of this class of quilting business. The obvious answer is that these parties do not control the business. They cannot interfere with the interests of the public, for all manufacturers of machines except the defendant may make and sell these same machines. The effect of the contract is that the plaintiff has prevented one manufacturer from furnishing these machines to its rivals in the quilting business. In Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456, Lorillard and his company agreed with the Old Dominion Company to discontinue running their vessels, or any others, between New York and ports in Virginia, and that they would not charter or sell the vessels to any other company or persons to be used on that route, and would not become in any way interested in the running of steamships between those places. Judge Gray, in delivering the opinion of the court, after citing Match Co. v. Roeber, held:

"Under the doctrine of that case, it is difficult to see how the contracts which are complained of here are open to the objection suggested by counsel. Regarded only in the light of what they tended to effect, these agreements removed a business rival, whose competition may have been deemed dangerous to the success or maintenance of the business of the Old Dominion Company. They could not, of course, exclude all competition in the business, but would in that particular case."

How, then, is the result different from the simple case of the sale by an individual of his business and his right to conduct it in a particular part of the land? The doctrine held by this court in Match Co. v. Roebe~, supra, should control in the case at bar, and these contracts, therefore, cannot be considered objectionable on the ground that they restrain competition. The plaintiff in this suit bought all the machines the defendant had, and the defendant agreed not to make similar machines for others. Had the defendant agreed to deliver to this plaintiff all the quilting machines he should make, the result, as far as the general trade is concerned, would have been the same. In both cases the plaintiff prevents one manufacturer from serving rivals. The contract is not so large as to interfere with the interests of the public. The general trade must not be restrained, but the greatest freedom of contract between individuals, acting within the law, should be assured, so that business may not be trammeled by unnecessary restrictions. Such contracts, entered into freely and voluntarily, will be enforced by courts of justice.

Injunction pendente lite granted. Ten dollars costs to abide event.