JAMES V. CUMMINGS, Appellant, *v.* UNION BLUE STONE COM-
PANY, and ELIZABETH SWEENEY et al., Surviving Members
of the Firm of E. SWEENEY & SONS, Respondents.

164   401
f165  552

164   401
f166  299
f166  304

164   401
168   101

CONTRACT — WHEN VOID, AS TENDING TO CREATE A MONOPOLY. An
agreement, between the producers of nearly the whole product of a com-
modity known as Hudson river blue stone and of at least ninety per
centum of the whole amount sold, and a company which engages to sell
all the marketable stone produced by them for the ensuing six years at
prices fixed by an association composed of such producers, and to appor-
tion the sales in specified proportions between them, no sales to be made
except through the company, is void as against public policy, in that it
threatens a monopoly whereby trade in a useful article may be restrained
and its price unreasonably enhanced.

*Cummings* v. *Union Blue Stone Co.*, 15 App. Div. 602, affirmed.

(Argued October 29, 1900; decided November 16, 1900.)

APPEAL from judgments of the Appellate Division of the
Supreme Court in the second judicial department, entered
July 30, 1897, and July 8, 1898, affirming judgments in favor
of defendants entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Leopold Leo* and *Benjamin Yates* for appellant. Not
every agreement ·in restraint of trade is unlawful; and
whether the agreement at bar is in unlawful restraint of trade
or not is a question of fact for a jury. It is not against
public policy to insist upon a reasonable profit in place of a
ruinous price. (*D. M. Co.* v. *Roeber*, 106 N. Y. 473; *Leslie*
v. *Lorillard*, 110 N. Y. 519; *Vinegar Co.* v. *Foehrenbach*,
148 N. Y. 58; *People* v. *Milk Exchange*, 145 N. Y. 267;
*Cohen* v. *B. & J. E. Co.*, 38 App. Div. 499; *Curran* v.
*Galen*, 152 N. Y. 33; *People* v. *N. R. S. R. Co.*, 121 N. Y.
582.)

*A. T. Clearwater* for Union Blue Stone Company,
respondent. The agreement is inimical to trade, its object

being to create a monopoly to control the market, to force the public to buy of its members alone, to fix and to raise prices. It was against public policy, was void, and no action can be maintained upon it. (*People* v. *Milk Exchange*, 145 N. Y. 267; *People* v. *Sheldon*, 139 N. Y. 251; *Judd* v. *Harrington*, 139 N. Y. 105; *Leonard* v. *Poole*, 114 N. Y. 371; *Arnot* v. *P. & E. C. Co.*, 68 N. Y. 558; *Saratoga Bank* v. *King*, 44 N. Y. 87; *Stanton* v. *Allen*, 5 Den. 434; *Hooker* v. *Vandewater*, 4 Den. 349; *People* v. *Fisher*, 14 Wend. 9; *Bartlett* v. *Smith*, 13 Fed. Rep. 263; *Cobb* v. *Prell*, 15 Fed. Rep. 744; *Irwin* v. *Willier*, 110 U. S. 499; *Roundtree* v. *Smith*, 108 U. S. 269.) The contract being illegal and void cannot be enforced. No action can be maintained upon it, and the courts will not aid in adjusting differences arising out of it, and requiring an investigation of the illegal transactions entering into it. (*S. C. Bank* v. *King*, 44 N. Y. 87; *Judd* v. *Harrington*, 139 N. Y. 105; *Leonard* v. *Poole*, 114 N. Y. 331; *Stanton* v. *Allen*, 5 Den. 434.)

*John F. Cloonan* for Elizabeth Sweeney et al., respondents. The contract, on which the plaintiff seeks to recover, is on its very face contrary to public policy, illegal and void. (L. 1892, ch. 688, § 7; L. 1899, ch. 690, § 1; *People* v. *Sheldon*, 139 N. Y. 251; *Leonard* v. *Poole*, 114 N. Y. 371; *People* v. *N. R. S. R. Co.*, 121 N. Y. 582; *People* v. *Milk Exchange*, 133 N. Y. 565; 145 N. Y. 267; *Judd* v. *Harrington*, 139 N. Y. 105; *Arnot* v. *P. & E. C. Co.*, 68 N. Y. 558.)

LANDON, J. The trial court, in directing a verdict for the defendants, held that the contract, for the alleged violation of which by the defendants the plaintiff sought to recover damages, was a combination to control the market of blue stone and the market price, and to increase the market price and maintain it at the increased price, and was, therefore, void.

The evidence was to the effect that in 1887 the plaintiff and fourteen other persons were the producers of nearly the whole

product of Hudson river blue stone, and of at least ninety per centum of the whole amount of such stone sold in the New York market to customers in various states east of the Mississippi river; that their yearly sales amounted to upwards of $1,500,000; that owing to competition among themselves their profits had for some time been practically nominal; that with the intent to increase their profits, and to secure to each of said producers such part of the sales as his usual production bore to the whole production, they entered into an agreement bearing date the 21st day of February, 1887, with the defendant the Union Blue Stone Company, and thereby agreed that the said company should act as their sales agent of all the marketable blue stone, manufactured and unmanufactured, which the market would take for the six years from that date at prices to be fixed by the Blue Stone Association, composed of the said producers, and to apportion the sales among the producers according to a schedule set forth in the contract, and to sell for no other parties, the producers agreeing to sell no stone except through such agent, and, acting as the Blue Stone Association, to fix the prices, and each to furnish, upon the request of the sales agent, his quota of stone as apportioned. This contract was observed by the parties for about three years. The prices were increased, the sales aggregated about $1,500,000 per year, and the plaintiff's share of the profits was satisfactory to him. By the end of three years competition in other kinds of stone and in artificial stone had so far developed as to threaten, in the opinion of the greater part of the producers, not including the plaintiff, further successful operation under the contract, and they resolved to discontinue operations under it, with the result to the plaintiff that he took no further benefit under it. The plaintiff, meantime, had assigned his interest under the contract and certain blue stone and other property to the defendants Sweeney in consideration of their payment to him of ten per centum of their gross amount of sales under the contract. The plaintiff charges that the blue stone company and his assignees, the Sweeneys, combined together to

prevent any further delivery and sales upon his account under the contract, and thus deprived him of any further profit.

The plaintiff urges that it was a question of fact for the jury, and not of law for the court, whether the contract was simply to secure reasonable prices, or to extort from the public unreasonable prices. It may be conceded that one of its purposes was to enable the parties to obtain reasonable prices, but it gave them the power to fix arbitrary and unreasonable prices. The scope of the contract, and not the possible self-restraint of the parties to it, is the test of its validity. They could raise prices to what they supposed the market would bear, and as they expected to supply nearly the entire demand of the market, the temptation to extortion was unusually great.

The plaintiff cites the cases which permit the vendor to sell his business with or without his plant, and to agree with his vendee that he will not by competition or other acts do anything to injure what he sells. (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Tode* v. *Gross*, 127 N. Y. 480; *Hodge* v. *Sloan*, 107 N. Y. 244.) It may be conceded that the law, as now understood, restrains no one from selling his property, nor does it compel any one to continue a business which he can sell, or finds it to his interest to abandon; much less to continue it for any time or in any particular manner or place. However it may have been when trade was small, money scarce, opportunities and markets few, at present the public has little to fear from any individual renouncing his calling and business in favor of another, and seeking a new field of activity. Contracts between individuals to that effect are not in general restraint of trade. But the case before us is of a different kind. It is one of such a combination among many dealers as threatened a monopoly, with which the individual would be practically powerless to compete, and the many consumers who would be severally exposed and coerced would be either compelled to submit to its exactions, or to forego the purchase of the commodity of customary use needful to them, and but for this monopoly obtainable in the market at a reasonable price. The

same evil principle pervades both large and small combinations ; all are alike offenders, differing in degree, but not in kind. And hence it is that contracts by which the parties to them combine for the purpose of creating a monopoly in restraint of trade, to prevent competition, to control and thus to limit production, to increase prices and maintain them are contrary to sound public policy and are void. (*People v. Sheldon*, 139 N. Y. 251 ; *People* v. *Milk Exchange*, 145 N. Y. 267 ; *Judd* v. *Harrington*, 139 N. Y. 105 ; *Leonard* v. *Poole*, 114 N. Y. 371 ; *Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558 ; *Stanton* v. *Allen*, 5 Denio, 434 ; *Hooker* v. *Vandewater*, 4 Denio, 349 ; *People* v. *Fisher*, 14 Wend. 9.)

It is urged that the rule is only applicable to articles of prime necessity. Cases of criminal conspiracies to commit any act " injurious to trade or commerce " (Penal Code, sec. 168 ; 2 R. S. 692, sec. 8, sub. 6) have been more frequent in commodities of prime necessity such as grain, meat, salt, milk, coal and the like, probably because such offenses are more flagrant and were punishable at the common law. We are not now reviewing a conviction for crime and need not inquire whether in any criminal element the case differs from *People* v. *Sheldon* (*supra*). The subject-matter of the contract before us is a useful commodity of a nature to be needful for many purposes. Without considering the question whether there are many articles of commerce which are in no proper sense necessaries or even conveniences, but mere luxuries or appendages of vanity, a monopoly in which does not conflict with the spirit of any statute or with the sound public policy which the statute cited declares, it is clear that the blue stone in question is not within any of such classes. It is abundant in the foothills of the Catskill mountains and not found of equal quality elsewhere. When this contract was made there were many small producers who supplied it to these parties, but were themselves without means or facilities to reach the New York market. The stone had been for many years and still is in use for sidewalks, crossings, curbings and gutters in the eastern and southern cities of the United States, and in

the construction of bridges, fountains, basins, floors and for trimmings in the exterior walls of buildings and for various other purposes. Its fitness and serviceability for these purposes were shown, and the evidence also tended to show that in these respects it had no superior in the New York market. In a civil action prime necessity need not be shown. The parties to this contract controlled ninety per centum of a total product of about $2,000,000 in value, marketed in New York city. Other kinds of stone were in competition with it, but it is plain that the customer who preferred this stone would be restricted in his reasonable rights, if constrained by a monopoly to pay an exorbitant price for it, or to accept another kind which he did not want.

The uncontradicted evidence left it clear that this contract was void for the reasons stated, and the trial court was right in so holding as a matter of law. The trial court was also right in holding that the plaintiff had made no proof of his special charge against these defendants of a fraudulent breach of the contract as to his alleged interest in it.

The judgments should be affirmed, with separate bills of costs.

GRAY, O'BRIEN, HAIGHT and WERNER, JJ., concur; PARKER, Ch. J., and CULLEN, J., not sitting.

Judgments affirmed.