STRAIGHT SIDE BASKET CORPORATION
v. WEBSTER BASKET CO., Inc.

No. 744 A.

District Court, W. D. New York.
Aug. 14, 1933.

Judson, Holley, Andrews & Speranza, of Lockport, N. Y. (John R. Hazel and Barton A. Bean, Jr., both of Buffalo, N. Y., of counsel), for plaintiff.

Van Duser & Liebschutz, of Rochester, N. Y. (Dwyer, Reilly, Roberts, McLouth & Dicker, of Rochester, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

This is a motion to strike out certain portions of the answer.

Plaintiff is the owner of certain patents covering methods, processes, machines, and attachments for manufacturing baskets commonly used for fruit packing. In or about April, 1930, the plaintiff entered into a license agreement with the defendant, whereby it licensed and leased to the defendant such patented machines and attachments and the right to manufacture baskets by the use thereof. The defendant agreed to conform to the terms of the lease, to pay certain royalties on baskets sold and rental on the machines and attachments. Defendant, licensee, admitted the validity of the patents, and plaintiff, licensor, agreed to use due diligence in prosecuting infringers thereof. The defendant, licensee, also agreed not to sell any of the baskets manufactured under the licenses for less than the market price thereof "and on such terms and conditions as licensor may from time to time decide are just and equitable."

This action is brought to recover royalties alleged to be due and unpaid for the years 1930 and 1931, and also to recover on another alleged cause of action not involved in this motion.

The answer, as an affirmative defense, sets up the failure of the plaintiffs to use due diligence in prosecuting infringers as covenanted in the license agreement. As an affirmative defense and counterclaim, the answer sets up the failure of the plaintiff to prosecute infringers, and also that the defendant has suffered special damages in the sum of $10,000 on account thereof. As another and separate affirmative defense, the defendant answers that the alleged cause of action herein for royalties is in restraint of trade, illegal, and void. The plaintiff has replied, denying any liability on account of the counterclaim.

█ Plaintiff moves to strike out all of the so-termed affirmative defenses and defense and counterclaim aforesaid on the ground that the matters therein set forth do not state a defense. This motion being made on the pleadings, the matters pleaded stand admitted as pleaded, and the pleadings are to be construed most favorably to the pleader. Calvin A. Lamb v. S. Cheney & Son, 227 N. Y. 418, 125 N. E. 817. It does not follow, however, that conclusions of law as set forth in the pleading are admitted. Equitable Life Assurance Society of U. S. v. Brown, 213 U. S. 25, 29 S. Ct. 404, 53 L. Ed. 682. A question of law is the matter to be determined on this motion.

█ The gravamen of the first defense herein mentioned (paragraphs 5–12) is the loss of the right of the plaintiff to prosecute infringers by reasons of its laches. The motion as to this defense must be granted. It does not state a defense in law. It contains no allegation that the defendant has suffered any loss on account of the plaintiff's laches. It is not alleged that any baskets manufactured by any one other than defendant were marketed. It is not made to appear that laches resulted prior to the production on account of which royalties are claimed. Assuming the covenant against infringers and the covenant to pay royalties were mutual covenants and interdependent, mere proof of failure to prosecute infringers would not suffice. Damage is not to be presumed, and must be alleged and proved. In the case of a nonexclusive license, where defendant has enjoyed, without interference so far as the pleading shows, benefits under the license agreement, he cannot refuse to pay the agreed price therefor on the ground that the right to protect him in future benefits has been lost. He may never suffer any loss. He may elect to continue to act under the license to the end. It would certainly be inequitable to say that he could do this and yet pay nothing for these benefits, even though his rights had in no way been lessened by infringement by others. Farnsworth v. Boro Oil & Gas Co., 216 N. Y. 40, 109 N. E. 860; Heller & Son, Inc., v. Lassner Co., 214 App. Div. 315, 212 N. Y.

S. 175; Stott v. Rutherford, 92 U. S. 107, 23 L. Ed. 486; Barber Asphalt Paving Co. v. Headley Good Roads Co. (D. C.) 284 F. 177; Hein v. Westinghouse Air Brake Co. (C. C.) 172 F. 524, 525; Gibbs v. McNeeley (C. C.) 102 F. 594; Jack v. Armour & Co. (C. C. A.) 291 F. 741. The case of Rosenthal Paper Co. v. National Folding B. & P. Co., 226 N. Y. 313, 123 N. E. 766, quoted at length by defendant, concerned an exclusive license. While it was said that the agreement to pay royalties and the agreement to protect against infringement were interdependent, the verdict for the plaintiff, assignee of assignee of inventor, for royalties was sustained on the ground that the defendant, "Having kept alive the contract and secured the results, it can not maintain that it is not subject to its obligations and liabilities, for the reason that Seligstein (assignor) had renounced it. Its remedy is the recovery, in counterclaim or action, of the *damages*, if any," caused. For these reasons the motion as to this pleading is granted.

 The motion to strike out the affirmative defense and counterclaim set forth in the answer (paragraphs 13–22) must be denied. In addition to the allegations set forth in the affirmative defense hereinbefore considered, this defense contains the allegations that the defendant has sustained damages in a definite amount, and that this has resulted through loss of business caused by infringers. The substance of the allegations in this defense is that the plaintiff represented that it had the *right to license the machines and attachments* in question, that the defendant relied on this representation, that this particular type of basket has been manufactured without license from the plaintiff and that these patents have been infringed, that the plaintiff had knowledge of such infringement and has failed to prosecute the infringers with due diligence, and that, as a result thereof, the defendant has suffered certain damages. It is true that this license agreement is nonexclusive. Proof of damages may be difficult, but the measure of such difficulty has no bearing on the sufficiency of the pleading.

The allegations of infringement and laches create questions of fact. "The length of time during which the party neglects the assertion of his rights which must pass in order to show laches varies with the peculiar circumstances of each case." Halstead v. Grinnan, 152 U. S. 412, 14 S. Ct. 641, 643, 38 L. Ed. 495. Knowledge of the infringement is a question of fact to be determined on the trial. Foster v. Mansfield, Coldwater, etc., R. Co., 146 U. S. 88, 13 S. Ct. 28, 36 L. Ed. 899; Smith Hardware Co. v. S. H. Pomeroy Co. (C. C. A.) 299 F. 544. Delay in prosecuting infringers while an action for infringement is pending may make a question of fact. Stearns-Roger Manufacturing Co. v. Brown (C. C. A.) 114 F. 939. As stated by plaintiff in its brief, "The contract requires plaintiff to use due diligence, and this, we conceive, implies reasonable diligence which is a relative term and depends upon the facts and circumstances." Wilfley v. New Standard Concentrator Co. (C. C. A.) 164 F. 421, Victory Bottle Capping Mach. Co. v. O. & J. Mach. Co. (C. C. A.) 280 F. 753, and Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526, disclose comparable facts determined on the trial.

In approaching consideration of the defense (paragraphs 23–32) that the license agreement is in restraint of trade and void, we may well first set forth certain propositions that either are agreed on by the parties or about which there can be little serious doubt under the authorities.

 1. Both the law of the United States and the law of the state in which it is shown the violation occurred apply in determining the validity of the agreement. Locker v. American Tobacco Co., 121 App. Div. 449, 106 N. Y. S. 115, affirmed 195 N. Y. 565, 88 N. E. 289; Burrows v. Interborough Metropolitan Co. (C. C.) 156 F. 389. This court has power to enforce state laws prohibiting combination in restraint of trade. Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 S. Ct. 220, 53 L. Ed. 417; Binderup v. Pathe Exchange, Inc., 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308.

 2. The terms of the agreement and not whether there has been any actual operation under it determine whether it is one in restraint of trade and stamp its legality or illegality. Cummings v. Union Blue Stone Co., 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655; Cohen v. Berlin & Jones Envelope Co., 166 N. Y. 292, 59 N. E. 906; United States v. Trenton Potteries Co., 273 U. S. 392, 47 S. Ct. 377, 71 L. Ed. 700, 50 A. L. R. 989.

 3. The patentee, plaintiff, had the right to fix the price at which the licensee may sell the baskets in question made by the patented machinery. The law is the same as though the patentee were vendor and the licensee a vendee. Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed.

1058; United States v. General Electric Co., 272 U. S. 476, 47 S. Ct. 192, 71 L. Ed. 362.

■■ 4. Even though the defendant was a party to an illegal agreement, illegality may be set up as a defense. Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058; Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486; Sherman Anti-Trust Act, § 1 (15 USCA § 1).

The answer alleges the making of the license agreement, and a copy thereof is therein included. It alleges that the plaintiff established the sales prices of the baskets and, as a part of its plan therefor, issued bulletins containing a schedule of prices, terms and conditions controlling sales, and that it also issued proposed agreements to be entered into between the defendant and authorized dealers specifically named. Copies of the bulletins of prices, terms, and conditions and the proposed dealer's contract are also included as part of the answer.

The license agreement itself contains no provision fixing specific prices at which the baskets might be sold. It does, however, provide that the licensee shall not sell at less than "fair market price and on such terms and conditions as licensor may, from time to time, decide are just and equitable." The defendant claims that the bulletin of prices aforesaid was issued pursuant to that provision. The bulletin reads in part that "subject to change without notice by licensor the following are hereby fixed as the fair market price of baskets, the terms and conditions upon which they may be sold by the licensee, under the terms of paragraph 24 of the attachment license contract" under the patents in question. The bulletin contains a list of sales prices for practically every state in the Union. It recites that "the fair market prices are minimum prices. Sales may be made at higher prices." It also defines "authorized dealers," and provides for a special discount of 7 per cent. to authorized dealers in addition to the general discount of 2 per cent. for cash in 15 days. Authorized dealers are defined as follows: "An authorised dealer in baskets is one who has executed and has not violated the Authorised Dealers' contract; * * * nor sold any of said baskets at less than the fair market prices as established therefor, as herein provided, and who is a person, firm, or corporation, with an established place of business who buys baskets from a basket manufacturer for the purpose of selling same, and does sell same at not less than the established fair market price to any-

one growing, packing and/or marketing fruits or vegetables."

Taking the license agreement, bulletins, and authorized dealer's contract together as binding upon the parties to this action, the indisputable fact is that the licensor controls the prices at which the baskets are to be sold both by the licensee and the authorized dealer.

■■ The plaintiff contends that such proposed authorized dealer contract is collateral and has no effect on the legality of the instrument signed by the parties. If this view is sustained, the motion would necessarily have to be granted. The answer in effect asserts that the license contract includes these bulletins, and that in pursuance thereof the plaintiff did establish sales prices for baskets to authorized dealers. While the specific question of collateral agreement was not considered in Boston Store v. American Graphophone Co., 246 U. S. 8, 38 S. Ct. 257, 258, 62 L. Ed. 551, Ann. Cas. 1918C, 447, the contract therein contained a provision that the plaintiff agreed "to adhere strictly and be bound by the official list prices established from time to time by said company," and that the graphophones were sold "subject to conditions and restrictions as to the persons to whom and the price at which they may be resold." Prices fixed subsequent to the agreement were in effect held to be part of the contract. While the "Authorised Dealers" contract is collateral in the sense that it creates a liability purporting to bind parties irrespective of the license agreement, nevertheless it is an agreement which is made in pursuance of the license agreement, and is not independent of such latter agreement. By connection it is made part of or is the terms and conditions referred to in the license agreement. The cases cited by the plaintiff are not in point here. Each of these was an action to recover the purchase price of goods claimed to have been sold by one engaged in an illegal combination. The contracts of purchase were independent of any combination, and these cases hold that "It is only where the invalidity is inherent in the contract that the Act (Anti Trust Act) may be interposed as a defense." The authorized dealer could recover on the sale of baskets. The licensee could not recover from the authorized dealer. Accepting the terms of the authorized dealer's contract, the authorized dealer could not recover against the licensor or licensee on a contract held to be in restraint of trade. The Sherman Anti-Trust Act, § 1 (15 USCA § 1), and the so-called Donnelly Act, N. Y.,

section 340, General Business Law (Consol. Laws, c. 20), declare illegal the agreement restraining competition, and not the agreement for the sale by the dealer. Schnaier Contracting Corp. v. International Tailoring Co., 119 Misc. 573, 197 N. Y. S. 646; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679.

It is contended that the licensee is a "qualified licensee," that the licensee may be considered as "sales agent," and also that the authorized dealer is in effect an agent. The only sense in which the licensee is a qualified licensee is in the sense that his rights are limited in the sale of baskets by the agreement. That, however, in no way exonerates him from liability as a principal under the license agreement. Were the licensee construed in law to be the agent of the licensor, the licensor could not legally through the licensee make an agreement fixing the prices for sales by the authorized dealer. Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058; United States v. General Electric Co., 272 U. S. 476, 47 S. Ct. 192, 196, 71 L. Ed. 362, cited by plaintiff, on the matter of agency, are authorities only for the proposition that "The owner of an article patented or otherwise is not violating the common law or the Anti-Trust Act by seeking to dispose of his articles directly to the consumer and fixing the price by which his agents transfer the title from him directly to such consumer." So here the licensee as agent could legally fix the price to the authorized dealer, but he could not go further.

Plaintiff seeks the construction that the "authorized dealer" is an agent of the licensee. I can see no basis for such construction. The bulletins and the authorized dealer's contract specifically describe such authorized dealer as a purchaser. The contract in its entirety contemplates an absolute dealer as one who "buys baskets from a basket manufacturer for the purpose of selling same." The dealer's contract contains a repetition of this definition, and in addition these significant and conclusive clauses, "The licensee agrees to sell to the authorized dealer, and the authorized dealer agrees to prosecute diligently the sale of said baskets," and further, "The authorized dealer will give the licensee a written order in duplicate for all baskets purchased."

The Sherman Anti-Trust Act, § 1 (15 US CA § 1), provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States * * * is declared to be illegal." The General Business Law of the State of New York, section 340, also provides: "Every contract, agreement, arrangement or combination whereby a monopoly in the ' * * * sale * ' * * of any article * * * used in the conduct of trade * * * is or may be created * * * is hereby declared to be against public policy, illegal and void."

Under authority of the Constitution statutes have been enacted to protect the patentee and his invention. It has long been recognized that such legislation is necessary to encourage "useful invention and promoting new and useful improvements by the protection and stimulation thereby given by inventive genius." Inventors by virtue of patents have what is rightly termed a "monopoly" in the patented article. The patentee may sell his patented article or he may withhold its sale by virtue of this monopoly. He may restrict the terms upon which the article may be used and fix the price at which the licensee may sell. The patent laws and these antimonopoly laws are not conflicting but are mutually exclusive of each other. Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486.

As I read the long line of opinions in the Supreme Court, that court has consistently held that, where a patentee has licensed the use of his patent, he cannot by agreement reserve the right to fix the price at which a purchaser from the licensee may sell. It seems to me necessary only to point attention to a few of the cases containing such opinions. Standard Sanitary Mfg. Co. v. United States, 226 U. S. 20, 33 S. Ct. 9, 57 L. Ed. 107; Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 28 S. Ct. 722, 52 L. Ed. 1086; Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502; Bauer & Cie v. O'Donnell, 229 U. S. 1, 33 S. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150; Straus v. Victor Talking Machine Co., 243 U. S. 490, 37 S. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955; Boston Store v. American Graphophone Co., 246 U. S. 8, 38 S. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447; Carbice Corp. v. American Patents Dev. Corp., 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819; vide also Walker on Patents (6th Ed.) vol. 1, § 365 et seq., and cases cited. Certain of these cases involve the sale of patented articles. Others involve restrictions in the use of patented articles. The sale contemplated under this agreement is the sale of unpatented products of a patented ma-

chine. The conclusion to be drawn from these cases in the view of the court is that there is no distinction to be made after the license to manufacture had been given.. In other words, the thing the licensee could not do, the licensor could not do. As was said in Carbice Corp. v. American Patents Dev. Corp., 283 U. S. 27, 51 S. Ct. 334, 335, 75 L. Ed. 819: "The attempt to limit the licensee * * * is comparable to the attempt of a patentee to fix the price at which the patented article may be resold." In Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058, and United States v. General Electric Co., 272 U. S. 476, 47 S. Ct. 192, 71 L. Ed. 362, there is nothing in conflict with the view herein expressed. The holding in the latter case on this point may be summed up in the statement that the owner of a patent has the absolute freedom in the use or sale of rights under his patent. Distinction from the case at bar is apparent. In United States v. General Electric Co., 272 U. S. 476, 47 S. Ct. 192, 196, 71 L. Ed. 362, the facts are in no way parallel to those 'present here. There sales were held to have been made directly by the patentee through agents. After discussing Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502, Boston Store v. American Graphophone Co., 246 U. S. 8, 38 S. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447, and Standard Sanitary Mfg. Co. v. United States, 226 U. S. 20, 33 S. Ct. 9, 57 L. Ed. 107, and pointing out that in these cases the purchasers of the patented article became complete owners, the court said: "We are of opinion, therefore, that there is nothing * * * which requires us to hold that genuine contracts of agency like those before us, * * * are violations of the Anti-Trust Act. The owner of an article, patented or otherwise, is not violating the common law, or the Anti-Trust law, by seeking to dispose of his article *directly to the consumer* and *fixing the price by which his agents* transfer the title from him directly to such consumer." (My italics.) In discussing the fixing of the price at which a licensee shall sell, the court also said: "That the decisions of this court holding restrictions as to price of patented articles invalid apply * * * really are only instances of the application of the principle * * * that a patentee may not attach to the article made by him or with his consent a condition running with the article in the *hands of purchasers* limiting the price at which *one who becomes its owner* for full consideration shall part with it." (My italics.) The plaintiff cites Appalachian Coals, Inc., v. United States, 288 U. S. 344,

53 S. Ct. 471, 77 L. Ed. 825; United States v. Colgate & Co., 250 U. S. 300, 39 S. Ct. 465, 468, 63 L. Ed. 992, 7 A. L. R. 443. The Appalachian Case involved a combination of a group of producers, and it was held in effect that the combination sought to effect economies and not to effect domination of prices. The Colgate Case involved the sufficiency of an indictment. This language from the opinion reveals that it does not support plaintiff's view: "And we must conclude that, as interpreted below, the indictment does not charge Colgate & Co. with selling its products to dealers under agreements which obligated the latter not to resell except at prices fixed by the company."

Another contention made by the plaintiff is that there is no allegation in the answer that the defendant entered into any "Authorized Dealers" contract with dealers. Such an allegation is unnecessary, if the agreement is illegal and such illegality is set up in the answer. Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058; Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486; Sherman Anti-Trust Law, § 1 (15 USCA § 1). "The scope of the contract, and not the possible self-restraint of the parties to it, is the test of its validity." Cummings v. Union Blue Stone Co., 164 N. Y. 401, 58 N. E. 525, 526, 52 L. R. A. 262, 79 Am. St. Rep. 655; United States v. Trenton Potteries Co., 273 U. S. 392, 47 S. Ct. 377, 71 L. Ed. 700, 50 A. L. R. 989.

In accordance with the authorities hereinbefore cited and the views hereinbefore expressed, the motion as to this defense must be denied.